IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JIM GRAY,   *

   Plaintiff,   *

v.   *     Civil Action No. 8:18-cv-00872-PX

AMSHER COLLECTION SERVICES, INC.,   *

   Defendant.   *

***

## MEMORANDUM OPINION

Pending before the Court is Defendant Amsher Collection Services, Inc. ("Amsher")'s motion for summary judgment. ECF No. 19.[1] The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, the Court denies in part and grants in part Amsher's motion.

**I.    Background**

In 2012, Plaintiff Jim Gray closed his account with T-Mobile USA, Inc. ("T-Mobile"). ECF No. 19-5 at 24. However, according to T-Mobile, Gray had two additional T-Mobile accounts, referred to here as the -8476 Account and the -7782 Account. ECF No. 19-4 ¶ 4. Gray asserts that the additional accounts were opened fraudulently. *See* ECF No. 19-5 at 10; ECF No. 19-6 at 17.

Indeed, at a time unknown to the Court, Gray's personal information was stolen. *See* ECF No. 2-1 at 9 (undated letter from the United States Office of Personnel Management stating that a cyber intrusion stole Gray's "Social Security Number and other personal information").[2]

---

[1] Also pending before the Court is Plaintiff Jim Gray's request for discovery sanctions, which will be addressed during the upcoming telephone conference. *See* ECF No. 21.

[2] Although Gray's initial Complaint was superseded by his Amended Complaint, Gray did not reattach any of the exhibits from the initial Complaint. However, because pro se pleadings are held to "less stringent standards

The additional accounts each became delinquent. *Id.* ¶¶ 5, 8. In 2015, T-Mobile placed the -8476 Account with a third-party for collection. *Id.* ¶ 5. Eventually, Gray and T-Mobile entered into a Settlement Agreement that resolved the dispute over the -8476 Account without any admission of liability. ECF No. 19-4 at 5.

In March 2017, T-Mobile placed the -7782 Account in collection status. ECF No. 19-4 ¶ 8. Gray disputed the debt with credit reporting agencies, and the agencies in turn notified Amsher of the dispute. ECF No. 19-6 ¶ 6. The day of notification, Amsher confirmed with T-Mobile that the debt was "due and owing." *Id.* ¶ 7.

Gray then called Amsher directly to dispute the debt. *Id.* ¶ 8. Although the -7782 Account had Gray's name, date of birth, and social security number, Gray informed Amsher that the account's Florida address did not match his Maryland address. ECF No. 19-6 at 17. The account also had an authorized user, Haj Malika (phonetic), whose name Gray did not recognize. *Id.* During the call, Amsher acknowledged that Gray believed the account was opened fraudulently. *Id.* However, the bulk of the call focused on whether the 2015 settlement agreement covered the -7782 Account. *Id.* Gray insisted that the settlement agreement resolved both debts, despite clear language on the face of the agreement that confined the settlement only to the -8476 Account. After speaking with Gray, Amsher marked the account as disputed. ECF No. 19-6 ¶ 9. One week later, Amsher ceased trying to collect the debt. *Id.* ¶ 11.

These events adversely affected Gray's credit score, and several institutions denied him credit. In October 2017, Credit Acceptance denied Gray vehicle financing. ECF No. 19-5 at 19. In November 2017, Gray's application for bank credit was denied. ECF No. 2-1 at 6. Finally, in January 2018, Veterans United denied Gray a home loan prequalification. ECF No. 19-5 at 16.

---

than formal pleadings drafted by lawyers," the Court will consider Gray's initial exhibits. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Gray alleges—although he does not submit evidence, via affidavit or otherwise—that the home loan was "needed as housing requirement for gaining custody" of his two children. ECF No. 15 at 2.

In February 2018, Gray, proceeding pro se, filed suit against Amsher in the Circuit Court for Prince George's County, Maryland, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and 18 U.S.C. § 875. ECF No. 2.[3] Amsher then removed the case to this Court, and, after Gray amended his Complaint, Amsher moved for summary judgment. ECF Nos. 1, 15, 19.

## II. Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman*

---

[3] Amsher did not move for summary judgment on the 18 U.S.C. § 875 claim.

*& Assocs., Inc*., 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co*., 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex*, 477 U.S. at 322.

Although the discovery period has not closed, Gray did not file an affidavit pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. The purpose of a Rule 56(d) affidavit is to ascertain what additional discovery is needed for the non-movant to challenge adequately a summary judgment motion. *See* Fed. R. Civ. P. 56(d). "The Fourth Circuit places 'great weight' on the affidavit requirement." *Nautilus Ins. Co. v. REMAC Am., Inc.*, 956 F. Supp. 2d 674, 683 (D. Md. 2013) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party." *Id.* (quoting 10B Wright, Miller & Kane, *Federal Practice & Procedure* § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

Gray did not file a formal Rule 56(d) affidavit, but he has identified relevant, particular information that he could receive through further discovery. ECF No. 21 at 1–2. For example, Gray has alerted the Court that he seeks billing records for the -7782 Account, which may demonstrate that Gray did not personally incur the debt. *Id.* at 2. Thus, the Court will permit further discovery on the surviving claims, potentially to include a third-party subpoena on T-Mobile. *See Chaplick v. Mao*, No. TDC-13-2070, 2016 WL 4516061, at *4 (D. Md. Aug. 25,

2016) (approving of further discovery and a second set of summary judgment motions after first motions were denied).

### III. Analysis

#### A. Fair Credit Reporting Act ("FCRA")

Gray asserts that Amsher violated the FCRA when it (1) reported the -7782 Account debt to credit reporting agencies ("CRAs") and Veterans United, and (2) insufficiently investigated Gray's dispute over the -7782 Account debt. The FCRA prohibits entities from "furnish[ing] any information relating to a consumer to any consumer reporting agency if the [entity] knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). However, the Act "limit[s] enforcement of subsection (a) to '[f]ederal agencies and officials and . . . State officials.'" *Beattie v. Nations Credit Fin. Servs. Corp.*, 69 F. App'x 585, 591 (4th Cir. 2003) (quoting 15 U.S.C. § 1681s-2(c)–(d)). Because the statute does not confer a private right of action to enforce subsection (a), and Gray does not qualify as a covered "official" under the statute, summary judgment in Amsher's favor is granted as to the claim that Amsher reported false information to the CRAs.

As to supplying information about the debt to Veterans United, Amsher submitted uncontroverted evidence that it did not communicate with Veterans United. ECF No. 19-6 ¶ 12. Because Gray did not provide contrary evidence and did not describe any evidence that further discovery could reveal, Gray's claim must fail as a matter of law as to the false information claim directly to Veterans United. Gray may still submit evidence about Veterans United to the extent that such evidence is relevant and probative to establish his other claims, if appropriate.

As to Gray's investigation claim, the Court denies summary judgment. A private right of action lies against furnishers of credit information for failure to investigate reasonably a

consumer's dispute after notice from a CRA. *Robinson v. Greystone All., LLC*, No. BPG-10-3658, 2011 WL 2601573, at \*3 n.6 (D. Md. June 29, 2011); *see also Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 509 (D. Md. 2004). To prevail on this claim, Gray must demonstrate that (1) he notified a CRA of the disputed information, (2) the CRA notified the furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information. *See Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2016 WL 4521651, at \*6 (D. Md. Aug. 26, 2016).

At this stage, the record evidence, viewed most favorably to Gray, demonstrates that Gray disputed the debt with the CRAs, and the CRAs notified Amsher of the dispute. ECF No. 19-6 ¶ 6. Amsher nonetheless contends that it reasonably investigated the dispute. Whether a dispute is reasonably investigated must be determined by "weighing the cost of verifying disputed information against the possible harm to the consumer." *See Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 432–33 (4th Cir. 2004). The reasonableness of an investigation is ordinarily a question of fact for the jury. *Meaney v. Nationstar Mortg.*, No. TDC-16-2959, 2018 WL 1014927, at \*10 (D. Md. Feb. 21, 2018). This is so because conduct sufficient to demonstrate that a furnisher engaged in a reasonable investigation in one context may be insufficient in another context. *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 851 (E.D. Va. 2017).

Here, Gray informed Amsher that the debt involved mismatched addresses and an unfamiliar authorized user name on the account. ECF No. 19-6 at 17. No evidence exists that Amsher investigated the allegations of fraud. Amsher's investigation instead consisted solely of contacting T-Mobile to confirm that the debt was "due and owing." *Id.* ¶ 8. Such confirmation may have been sufficient to prove the subtotals of the debt and that the settlement on

account -8476 did not resolve the -7782 Account debt, but did not touch upon whether Gray was the individual who opened or maintained the -7782 Account. *See* ECF No. 21-1 at 6–7. Amsher's failure to investigate these matters precludes finding that it conducted a reasonable investigation as a matter of law. *See Long v. Pendrick Capital Partners II, LLC*, No. GJH-17-1955, -- F. Supp. 3d -- , 2019 WL 1255300, at *7 (D. Md. Mar. 18, 2019) (entering summary judgment for the plaintiff on unreasonableness of investigation where furnisher did not investigate mismatches in Social Security number, birthdate, and second address); *cf. Johnson*, 357 F.3d at 431 (holding that a jury could find that a furnisher conducted an unreasonable investigation in failing to consult underlying documents or verify the accuracy of information in its system). Amsher's motion for summary judgment must be denied as to the failure to investigate claim.

### B. Fair Debt Collection Practices Act ("FDCPA")

Gray also avers that Amsher violated the FDCPA when it "reiterated it's [sic] demand for payment and refused to remove the false entries without Plaintiff paying the full amount demanded." ECF No. 15 at 1. The FDCPA "protects consumers from 'abusive and deceptive debt collection practices by debt collectors.'" *Alston v. United Collections Bureau, Inc.*, No. DKC 13-0913, 2014 WL 859013, at *4 (D. Md. Mar. 4, 2014) (quoting *Akalwadi*, 336 F. Supp. 2d at 500). To succeed on this claim, Gray must demonstrate that (1) he has been the object of collection activity arising from consumer debt, (2) Amsher is a debt collector as defined by the FDCPA, and (3) Amsher engaged in an act or omission prohibited by the FDCPA. *See Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013). Gray does not specify which particular part of the FDCPA Amsher allegedly violated. However, because the conduct at issue may have, at a minimum, violated the

prohibition against false, deceptive, or misleading representation or means to collect a debt, summary judgment must be denied.

The FDCPA "prohibits '[t]he use of any false representation or deceptive means to collect or attempt to collect any debt . . . .'" *United Collections Bureau*, 2014 WL 859013, at *4 (quoting 15 U.S.C. § 1692e(10)). In determining whether an FDCPA violation occurred in this manner, the Court considers "how the least sophisticated consumer would interpret the allegedly offensive language." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 395 (4th Cir. 2014). If the false statement "would not mislead the 'least sophisticated consumer,'" it "is not actionable." *Stewart*, 859 F. Supp. 2d at 761. Additionally, the "misrepresentation must be 'material' to violate § 1692e." *Jackson v. Sagal*, No. GLR-18-495, -- F. Supp. 3d -- , 2019 WL 1429641, at *4 (D. Md. Mar. 29, 2019) (quoting *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014)).

Amsher does not contest that it told Gray that the only way to remove the account from his credit report was by paying the debt in full. *See* ECF No. 19-1 at 7. Even assuming that Amsher was technically correct that payment in full would remove the debt, a fact finder could determine that Amsher was nonetheless misleading by omission. Amsher did not also tell Gray that if Amsher determined the debt to be fraudulent, Amsher would have been required to report this determination to all CRAs to which Amsher had furnished information. *See* 15 U.S.C. § 1681s-2(a)(2). Thus, when Amsher told the consumer that he had only one option to remove the account from his credit report—paying the disputed debt—Amsher could have misled the least sophisticated consumer into believing that there was no other way to correct the information on his credit report. In this respect, Amsher's representations could dissuade the least sophisticated consumer from continuing to contest the debt, and instead just pay it. *See Long*,

8

2019 WL 1255300, at *10 (holding that debt collector's "insistence that taking further steps with [furnisher] would be futile" precluded entry of summary judgment in furnisher's favor on FDCPA claim).

Amsher's contention that it had no duty to *remove* the account, as opposed to furnishing information that the debt was "paid in full," misses the mark. According to Amsher, it is industry standard to mark an account as "paid in full" after a customer pays, rather than deleting the account. ECF No. 19-1 at 7–8. However, Amsher's argument presupposes that the debt was not fraudulent, a conclusion the Court cannot reach based on the evidence currently before it. Regardless of whether the debt is "marked" or "removed," the issue for the fact finder is whether Amsher's representations would mislead the least sophisticated consumer into believing the only way to fix the adverse credit report was to pay the debt in full. *See United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996) ("[T]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.") (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d. Cir. 1993)). Perhaps additional discovery will demonstrate otherwise. But at this stage, the Court declines to enter summary judgment in Amsher's favor on this claim.

### IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Amsher's motion for summary judgment. ECF No. 19. A separate Order follows.

5/15/2019  /S/
Date  Paula Xinis
  United States District Judge